IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIANITA VICTORIA SAENZ,

    Plaintiff,

v.                                                                                                                      1:15-cv-01034-LF

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Marianita Victoria Saenz's Motion to Reverse and Remand and Memorandum in Support (Docs. 24, 24-1), which was fully briefed July 12, 2016. *See* Docs. 26, 27, 28. The parties consented to my entering final judgment in this case. Docs. 12, 13, 14. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to properly weigh the medical opinion of Dr. Barbara Koltuska-Haskin. I therefore GRANT Ms. Saenz's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.  Background and Procedural History

Ms. Saenz was born in 1981, has an eighth grade education, and has no past relevant work.[4] AR 34, 48, 135, 158.[5] Ms. Saenz reported multiple rapes, multiple suicide attempts, and multiple psychiatric hospitalizations as a teenager. AR 38, 403. Ms. Saenz filed an application for supplemental security income on July 11, 2011—alleging disability since September 13, 2010 due to emotional problems, anger management issues, depression, bipolar disorder,

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Ms. Saenz's reported work experience consists of one month at 7-Eleven, two weeks at McDonald's, sporadic daily labor work as a banquet server and dishwasher, and work as a Sonic car hop. AR 35–36, 48, 169.

[5] Documents 17-1 through 17-29 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than the CM/ECF document number and page.

3

hypothyroidism, asthma, a heart murmur, and problems from ectopic pregnancies. AR 135–40, 157. The Social Security Administration ("SSA") denied her claims initially on January 9, 2012. AR 84–87. The SSA denied her claims on reconsideration on March 15, 2013. AR 95–98. Ms. Saenz requested a hearing before an ALJ. AR 99–103. On March 11, 2014, ALJ John R. Morris held a hearing. AR 30–52. Ms. Saenz represented herself at the hearing. AR 32–33. ALJ Morris issued his unfavorable decision on July 23, 2014. AR 8–29.

At step one, the ALJ found that Ms. Saenz had not engaged in substantial, gainful activity since July 11, 2011, the date of her application. AR 13. At step two, the ALJ found that Ms. Saenz suffered from the following severe impairments: obesity, diabetes, and "a mental condition variously diagnosed to include depression, PTSD, and alcohol and marijuana abuse." *Id.* The ALJ found Ms. Saenz's history of ectopic pregnancies, asthma, and hypothyroidism to be non-severe. *Id.*[6] At step three, the ALJ found that none of Ms. Saenz's impairments, alone or in combination, met or medically equaled a Listing. AR 14–16. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Saenz's RFC. AR 16–23. The ALJ found Ms. Saenz had the RFC to perform light, unskilled work. AR 16.

At step four, the ALJ concluded that Ms. Saenz did not have any past relevant work. AR 23. At step five, the ALJ found that Ms. Saenz could perform unskilled, light jobs that exist in significant numbers in the national economy. AR 23–24. On September 15, 2014, Ms. Saenz requested review of the ALJ's unfavorable decision by the Appeals Council. AR 6. On

---

[6] The ALJ found the following were not medically determinable impairments: chronic pelvic pain, arthritis, back pain, knee pain, sleep apnea, cardiac condition, heart murmur, and injuries from a car crash. AR 14.

September 8, 2015, the Appeals Council denied the request for review. AR 1–5. Ms. Saenz timely filed her appeal to this Court on November 12, 2015. Doc. 1.[7]

## IV. Ms. Saenz's Claims

Ms. Saenz raises four arguments for reversing and remanding this case: (1) the ALJ erred by failing to give controlling weight to the opinion of treating neuropsychologist Dr. Koltuska-Haskin; (2) the ALJ's RFC finding that that claimant can perform a full range of light work is not supported by substantial evidence; (3) the ALJ's step five findings are not supported by substantial evidence because the ALJ gave the vocational expert an incomplete hypothetical, and because the ALJ failed to show there were jobs in the regional or national economies that Ms. Saenz could perform; (4) the ALJ denied Ms. Saenz due process at the administrative hearing. Because I remand based on the ALJ's failure to properly weigh the opinion of Dr. Koltuska-Haskin, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. Analysis

Ms. Saenz argues that the ALJ erred by not giving controlling weight to the opinion of treating neuropsychologist Dr. Koltuska-Haskin. Doc. 24-1 at 17–20. Ms. Saenz also argues that the ALJ committed legal error by giving greater weight to the opinions of non-treating consultative examiners Cathy L. Simutis, Ph.D., and Davis Brimberg, Ph.D., without first doing a proper treating source analysis. *Id*. The Commissioner does not dispute that Dr. Koltuska-Haskin is a treating neuropsychologist. *See* Doc. 26 at 11–13 (offering no argument in response to Ms. Saenz's assertion that Dr. Koltuska-Haskin is a treating source, and analyzing the ALJ's

---

[7] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 416.1481; *see also* AR 2.

evaluation of Dr. Koltuska-Haskin's opinion using the treating source rules).[8] The Commissioner simply argues that the ALJ gave valid reasons for giving less weight to Dr. Koltuska-Haskin's opinion. *See id*. For the reasons discussed below, I find that the ALJ committed legal error by failing to conduct a proper treating source analysis of Dr. Koltuska-Haskin's opinion, and I remand on this basis.

In analyzing whether a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2); *Watkins*, 350 F.3d at 1300). If the opinion meets both criteria, the ALJ must give the treating source's opinion controlling weight. *Id*. To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). "Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating [source's] opinion." *Watkins*, 350 F.3d at 1300 (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)).

---

[8] A "treating source" is an "acceptable medical source" who has provided claimant with medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1527(a)(2) (for use in evaluating opinion evidence in claims filed before March 27, 2017). A licensed or certified psychologist is an acceptable medical source, who may be considered a treating source. *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).

6

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether a treating source's opinion should be rejected altogether or assigned some lesser weight:

1. **Examining relationship**: more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**: more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:** more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:** the more consistent the opinion is with the record as a whole, the more weight it should be given;
5. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 416.927(c)(1)–(6); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301. As the first two factors make clear, even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *see also Watkins* 350 F.3d at 1300.

The ALJ need not explicitly consider and apply each and every factor to each opinion. *Oldham*, 509 F.3d at 1258. "[N]ot every factor for weighing opinion evidence will apply in every case." *Id*. (quoting SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006)). However, "the record must reflect that the ALJ *considered* every factor in the weight calculation." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (unpublished). In addition, the ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this

particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300–01).

"Explicit findings properly tied to each step of the prescribed analysis facilitate meaningful judicial review" and are required to avoid remand. *Chrismon v. Colvin*, 531 F. App'x 893, 901 (10th Cir. 2013) (unpublished); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (finding error where "[a]lthough it [was] obvious from the ALJ's decision that he did not give [the treating source's] opinion controlling weight, the ALJ never expressly stated that he was not affording it controlling weight, nor did he articulate a legitimate reason for not doing so.").

Here, the ALJ committed legal error in the first step of the treating source analysis. The ALJ did not give Dr. Koltuska-Haskin's opinion controlling weight, and instead gave it "little weight."[9] In doing so, the ALJ did not complete the required first step in the analysis: determining whether Dr. Koltuska-Haskin's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was consistent with the other substantial evidence in the record. *Pisciotta*, 500 F.3d at 1077.[10] The ALJ stated only that he gave Dr. Koltuska-Haskin's opinion "little weight" because "it appears to be based mainly on the

---

[9] The ALJ did not formally apply the treating source analysis and did not explicitly state that he was not giving Dr. Koltuska-Haskin's opinion "controlling weight," but that finding is implicit in the ALJ's statement that he gave Dr. Koltuska-Haskin's opinion "little weight." *See* AR 21–22.

[10] The Commissioner argues that "Dr. Koltuska-Haskin conducted a host of testing, which did not support her opined limitations" and claims that "the ALJ reasonably discounted the opinion and relied more on Dr. Koltuska-Haskin's actual clinical findings, which demonstrated that Plaintiff had greater functioning than indicated by Dr. Koltuska-Haskin's extreme opinion." Doc. 26 at 12–13. The ALJ's opinion, however, contains no discussion of the purported mismatch between the objective testing and the opinion. *See* AR 21–22. This Court cannot rely on explanations not provided by the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

subjective complaints of the claimant without corroboration with the medical record." AR 22.
The ALJ, however, failed to discuss the clinical and laboratory techniques that Dr. Koltuska-Haskin's used in formulating her opinion, or to assert that the techniques are not medically acceptable.[11]

Dr. Koltuska-Haskin assessed Ms. Saenz over a four-day period—through neuropsychological testing, observation, and a clinical interview. AR 957–67. She administered numerous objective tests to measure Ms. Saenz's educational, cognitive, and emotional functioning, including the following:

- Mini-Mental State Exam
- Wechsler Adult Intelligence Scale-IV (WAIS-IV)
- Wechsler Memory Scale-IV FA (WMS-IV FA)
- Controlled Word Association Test (FAS)
- Boston Naming Test
- Street-Gestalt Test
- Bender-Gestalt Test
- Rey Complex Figure Test
- Hooper Visual Organization Test
- Conners' Continuous Performance Test-II (CPT-II V.5)
- Trail Making Test
- Wisconsin Card Sorting Test (WCST)
- Category Test (Long Form)
- Beck Depression Inventory (BDI)
- Beck Anxiety Inventory (BAI)
- ADHD Questionnaire
- Sample of Spontaneous Writing
- Minnesota Multiphasic Personality Inventory (MMPI)
- Incomplete Sentences Blank-Adult Form
- PTSD Checklist (PCL-5)

AR 960. Given the extensive objective testing she performed, the record does not support the ALJ's assertion that Dr. Koltuska-Haskin based her opinion primarily on Ms. Saenz's subjective

---

[11] "Medically acceptable" clinical and laboratory diagnostic techniques are those which are "in accordance with the medical standards that are generally accepted in the medical community as the appropriate techniques to establish the existence and severity of an impairment." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996).

9

complaints. Further, "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective 'tests'; those findings 'may rest either on observed signs and symptoms or on psychological tests.'" *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished) (quoting *Robinson*, 366 F.3d at 1083 (citing 20 C.F.R. Subpart P, App. 1 § 12.00(B)); *Langley*, 373 F.3d at 1122 (same)). In addition, the ALJ does not explain how Dr. Koltuska-Haskin's assessment of Ms. Saenz's mental functional capacity is inconsistent with any other assessment of her mental functional capacity. A treating source's opinion is "not inconsistent" so long as "there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3.

Instead of pointing to any evidence that contradicts or conflicts with Dr. Koltuska-Haskin's opinion about Ms. Saenz's mental functional capacity, the ALJ instead focused on the fact that Ms. Saenz told Dr. Koltuska-Haskin that she had sleep apnea, head injuries from two car accidents, and a history of cervical cancer—stating that these conditions are not documented in the medical record. AR 21–22. Based on this, the ALJ concluded that "[i]t is thus possible that her representations about the severity of her mental health condition are also exaggerated." AR 22. The ALJ failed to draw any link between Ms. Saenz's subjective reports about her physical conditions and Dr. Koltuska-Haskin's opinion about Ms. Saenz's mental functional capacity. "[A]n ALJ may not make speculative inferences from medical reports and may reject a treating [source's] opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Robinson*, 366 F.3d at 1082 (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)). The ALJ failed to cite any medical evidence that contradicted Dr. Koltuska-Haskin's opinion about Ms. Saenz's

mental functional capacity. In short, the ALJ committed legal error by failing to conduct a proper treating source evaluation of Dr. Koltuska-Haskin's opinion. He failed to complete the first step of the required two-step inquiry by failing to assess whether Dr. Koltuska-Haskin's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it was consistent with other substantial evidence in the record. Remand therefore is required.

Even if the ALJ did not believe Dr. Koltuska-Haskin was a treating source, the ALJ failed to "give good reasons, tied to the factors" listed in 20 C.F.R. §§ 416.927(c)(1)–(6) for the weight he assigned to her opinion. *Krauser*, 638 F.3d at 1330. The ALJ asserted that Dr. Koltuska-Haskin's opinion was "based mainly . . . on [Ms. Saenz's] subjective complaints." AR 22. This assertion, if true, would affect the supportability of the medical opinion. However, as discussed above, the record does not support this conclusion. Second, the ALJ's claim that the opinion lacks "corroboration with the medical record" (AR 22) would, if true, affect the consistency of the medical opinion. But again, as discussed above, the ALJ failed to point to any evidence that contradicts or conflicts with Dr. Koltuska-Haskin's opinion about Ms. Saenz's mental functional capacity. Finally, the ALJ asserted that Dr. Koltuska-Haskin "evaluated the claimant when she was not being treated" and that her assessment was not representative of Ms. Saenz's "condition when she is following medical advice, taking medication and attending counseling." AR 22. This consideration would fall under "other factors" in the analysis, but standing alone, it does not constitute substantial evidence for the weight the ALJ assigned to Dr. Koltuska-Haskin's opinion. While the ALJ claims that Dr. Koltuska-Haskin found that "claimant's condition *would* improve with medication," AR 22, Dr. Koltuska-Haskin actually found that Ms. Saenz "*may* benefit from medication adjustment," AR 966. In addition, the ALJ

11

gave Dr. Simutis's opinion "great weight," AR 21, despite the fact that Ms. Saenz was not in therapy at the time of her visit, and the ALJ gave Dr. Brimberg's opinion "moderate weight," despite the fact that Ms. Saenz was not taking medication and attending counseling at the time of the visit, AR 21. The ALJ did not discount the other doctors' opinions because of lack of treatment; thus, standing alone, lack of treatment is not a valid reason for the ALJ to discount Dr. Koltuska-Haskin's opinion.

## VI. Conclusion

The ALJ erred by failing to do a proper treating source analysis. The Court remands so that the ALJ can conduct this analysis. The Court does not reach Ms. Saenz's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 24) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent